PATTERSON BELKNAP WEBB & TYLER LLP
Robert P. LoBue (RL 2284)
Gloria C. Phares (GP 7611)
Ravi V. Sitwala (RS 2140)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

KING FEATURES SYNDICATE, INC., and
HEARST HOLDINGS, INC.,

                                Plaintiffs,

                      v.

A.V.E.L.A., INC. d/b/a ART & VINTAGE
ENTERTAINMENT LICENSING AGENCY,
ART-NOSTALGIA.COM, INC., X ONE X
MOVIE ARCHIVE INC., and LEO VALENCIA,

                                Defendants.

------------------------------------------------------------x

06 Civ CV 6464

**COMPLAINT**

Jury Trial Demanded

RECEIVED AUG 25 2006 U.S.D.C. S.D. N.Y. CASHIERS

JUDGE SAND

        Plaintiffs King Features Syndicate, Inc. ("King Features"), and Hearst Holdings,

Inc. ("Hearst Holdings," and collectively with King Features, "Plaintiffs"), by their undersigned

counsel, allege:

## INTRODUCTION

        1.      POPEYE and FLASH GORDON are among the most famous and best

loved characters in the world.  For over seventy years, they have entertained and delighted

readers of newspaper comic strips and moviegoers.  Today, in addition, these characters are

licensed for use in association with a wide variety of merchandise.  King Features owns the

copyrights in and to the characters POPEYE and FLASH GORDON, which are exclusively

licensed to Hearst Holdings. Without any authorization from Plaintiffs, Defendants have set themselves up in direct competition with Plaintiffs, pretending to have rights to Plaintiffs' famous characters, and displaying, licensing and offering to license those characters for use in merchandise. As a result of Defendants' acts, unauthorized merchandise, such as figurines depicting Plaintiffs' copyrighted POPEYE character, has entered the market. Plaintiffs therefore sue to restrain and recover for this willful infringement of their rights and to bar Defendants from deceiving the trade and public by claiming rights in Plaintiffs' characters that Defendants do not possess.

## JURISDICTION AND VENUE

2.      These claims arise under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and state statutory and common law of unfair competition.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (a) (diversity of citizenship) and 28 U.S.C. § 1338 (jurisdiction for copyright and trademark actions). The amount in controversy exceeds $75,000. In addition, the Court has supplemental jurisdiction over all claims pleaded under state law, pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial portion of the acts giving rise to this case occurred within this district, and pursuant to 28 U.S.C. § 1400, because these Defendants, or their agents, may be found within this district and in the State of New York.

1304749v1

**THE PARTIES**

5.        Plaintiff King Features is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.  Plaintiff Hearst Holdings is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.  Plaintiffs are, inter alia, engaged in the business of producing and distributing a wide variety of well-known comic strips and characters, and as part of their business grant rights to use such characters in merchandise.

6.        On information and belief, defendant A.V.E.L.A. Inc., d/b/a Art & Vintage Entertainment Licensing Agency ("AVELA") is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 89502.

7.        On information and belief, defendant Art-Nostalgia.com, Inc. ("Art-Nostalgia") is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 89502.

8.        On information and belief, defendant X one X Movie Archives, Inc. ("X one X") is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 89502.

9.        On information and belief, defendant Leo Valencia is a citizen of the State of Nevada and the controlling officer, director and principal of defendants AVELA, Art-Nostalgia, and X one X.  According to public records of the Secretary of State of the State of Nevada, Mr. Valencia is the only officer of AVELA and Art-Nostalgia, serving as President, Secretary and Treasurer of each entity.  Mr. Valencia has also represented himself as "authorized agent" of defendant X one X, and X one X, AVELA and Art-Nostalgia have admitted in other judicial proceedings that Mr. Valencia is the President of each such corporation.

3

1304749v1

10.     On information and belief, defendants AVELA, Art-Nostalgia and X one X are alter egos of one another, under the common control of Mr. Leo Valencia and organized and operated as three integrated and mutually supportive branches of Mr. Valencia's business enterprise.  X one X purports to own copyrights in and to a number of images of famous cartoon characters, including POPEYE and FLASH GORDON, that in truth are owned by others. AVELA serves as licensing agent with respect to those purported copyrights held by X one X. Art-Nostalgia operates a website that displays images of the various characters that X one X, through AVELA, purports to license.  The three defendants operate together from the same location and under common control as an infringement factory, trading on and profiting from famous characters and other entertainment properties created and owned by others.

## PLAINTIFFS' INTELLECTUAL PROPERTY

### A.     POPEYE

11.     The character POPEYE was created by Mr. Elzie Crisler Segar, then an employee of a previous corporation named King Features Syndicate, Inc., and first appeared in a published work on or about January 17, 1929.  A copy of that publication is annexed hereto as Exhibit A.  Copyright in and to that publication was registered under certificate number K-536345.  That copyright registration was duly renewed in 1956 under renewal certificate R-164887.  King Features is, and at all times relevant to this complaint has been, the owner of the above-cited subsisting renewal copyright and many other subsisting copyrights that embody the POPEYE character.

12.     The comic strip in which POPEYE appeared was initially entitled "Thimble Theater" and later "Thimble Theater-Starring Popeye."  That strip, now entitled "POPEYE," has been regularly published for years with POPEYE as its star and main character. The character POPEYE, with his familiar cap; pipe cocked out of the side of his mouth; sailor

4

1304749v1

uniform; outsized, tattooed forearms; and stylized facial features is clearly recognizable in the original strip. By the time motion pictures featuring POPEYE began to appear in or about 1933, the pictorial identity of the character POPEYE was well established.

13. Plaintiffs have been engaged in the business of commercially exploiting throughout the United States the POPEYE character, and maintain numerous merchandise and publishing licenses for the manufacture and sale of products featuring the POPEYE characters, including accessories, domestics, food and beverages, gifts and novelties, housewares, and numerous other product categories. These products are manufactured under strict quality control and style approval. POPEYE has also become a theme park attraction at Universal Studios in Florida, under license from Plaintiffs.

14. The POPEYE products and services licensed under Plaintiffs' authority have become and are well known to the American public, and have generated wide consumer appeal. The characters and likenesses sold under the copyright have generated gross sales of goods and services in the millions of dollars.

15. As a result of the above-described actions, the name POPEYE and images of POPEYE possess a valuable goodwill and are well known to the public as identifying products and services that are authorized by Plaintiffs.

**B.     FLASH GORDON**

16. The space adventure hero FLASH GORDON was created by Alexander Raymond, an employee of the previous King Features Syndicate, Inc. FLASH GORDON's first published appearance occurred on or about January 3, 1934. Claim to copyright in that publication was registered under certificate number AA 135936 and was duly renewed under renewal certificate number R-274511. A copy of that first-published comic strip appearance of the character, as it appeared in a newspaper dated on or about January 7, 1934, is annexed as

1304749v1

Exhibit B.

17.    Plaintiff King Features is, and at all times relevant to this complaint has been, the owner of the above-cited subsisting renewal copyright and many other subsisting copyrights that embody the FLASH GORDON character.  Like POPEYE, FLASH GORDON starred for many years in motion pictures produced under license from the first King Features Syndicate, Inc. and today continues to be a well known character and a popular and profitable licensing property.

18.    Plaintiffs have been engaged in the business of commercially exploiting throughout the United States the FLASH GORDON character, and maintain numerous merchandise and publishing licenses for the manufacture and sale of products featuring the FLASH GORDON characters, including apparel, collectibles, and numerous other products. These products are manufactured under strict quality control and style approval.

19.    The FLASH GORDON products and services licensed under Plaintiffs' authority have become and are well known to the American public, and have generated wide consumer appeal.  The characters and likenesses sold under the copyright have generated gross sales of goods and services in the millions of dollars.

## DEFENDANTS' INFRINGING ACTS

20.    Defendant AVELA operates a website, www.avela.net, on which it identifies itself as "a full service multimedia merchandising and licensing agency, representing the world's largest and rarest artwork collection(s) of Hollywood."  On its website and elsewhere, AVELA actively solicits merchandise licensees for a wide range of cartoon characters and other entertainment properties in which it purports to own rights.

6

21.     The major annual trade show of the licensing industry was held in New York City at the Javits Center on and around June 20, 2006.  Plaintiffs maintained a booth at the trade show, as they customarily do, to promote their many licensable properties.  This year, however, there was one significant difference.  In full view of Plaintiffs' booth was the AVELA booth, the walls of which were plastered with banners displaying images of famous cartoon characters to which Plaintiffs hold exclusive rights, including POPEYE and FLASH GORDON.  At the trade show, representatives of AVELA handed out "sell sheets" and actively solicited licensees for merchandise based on characters to which the Plaintiffs hold exclusive rights.  Certain sell sheets, copies of which are annexed as Exhibit C, prominently featured images of POPEYE.

22.     On information and belief, AVELA has licensed and offered to license third parties to make and sell merchandise that embodies Plaintiffs' exclusive properties, including POPEYE.  One such purported licensee has manufactured and distributed three dimensional figurines of POPEYE.  Those figurines have appeared in retail outlets and for sale on prominent websites such as eBay and Amazon.com.  The packaging for this POPEYE figurine is labeled "The Sailor Man," omitting the name "POPEYE."  The character embodied in the figurine, however, is immediately recognizable as POPEYE, who is often referred to as "Popeye the Sailor Man."  Photographs of this product manufactured and sold under purported license from AVELA are annexed as Exhibit D.

23.     The pictorial images of characters licensed and offered for license by AVELA bear a prominent purported copyright notice in the name of defendant X one X.  X one X, through its agent defendant Leo Valencia, has filed claims to copyright in a variety of images of POPEYE and FLASH GORDON, including without limitation copyright registration

1304749v1

certificates VA 1-309-404 and VA 1-309-413. In its copyright registrations, X one X claims that it has added new material in the form of "changes and additional artwork" to pre-existing movie posters that display these characters. X one X knows, or should know, however, that it has no right to copy or make derivative works that incorporate the characters POPEYE or FLASH GORDON. The inclusion of purported copyright notices on the materials offered for license by AVELA as an agent of X one X lends a false aura of genuineness and validity to such materials and the offers to license them, and undermines the Plaintiffs' exclusive rights in those properties.

        24.      Defendant Art-Nostalgia operates a website, www.art-nostalgia.com, that displays an extensive array of visual materials related to motion pictures, including purported movie posters for motion pictures featuring POPEYE and FLASH GORDON. There is nothing on the Art-Nostalgia website to indicate that these materials are available for sale or license by Art-Nostalgia.com, but they and the website itself bear the purported copyright notice of X one X. On information and belief, the Art-Nostalgia website, including its inventory of movie posters, is used as an online catalog for the infringing licensing activities of AVELA and X one X. In fact, the listing of movie posters and other visual works on the Art-Nostalgia website is labeled as a "catalog."

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement of the POPEYE Character)

        25.      Plaintiffs hereby reallege and incorporate by reference as if fully set forth hereat the allegations of paragraphs 1 through 24 above.

        26.      This claim arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

        27.      The design, configuration and distinctive features of the POPEYE character are wholly original and constitute copyrightable subject matter under the Copyright Act.

1304749v1

28. At all times relevant to this complaint, the copyright in the POPEYE character was owned by King Features and exclusively licensed to Hearst Holdings, both of which are, and at all relevant times have been, U.S. citizens.

29. All formalities required to be observed in order to maintain the copyright in the POPEYE character have been observed.

30. Defendants have infringed and contributorily infringed the copyright in the POPEYE character by the following acts, among others:

a. copying and inducing or facilitating the copying of the POPEYE character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(1);

b. creating and inducing or facilitating the creation of derivative works based upon the POPEYE character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(2);

c. distributing and inducing or facilitating the distribution of copies of Plaintiffs' copyrighted POPEYE character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(3); and

d. publicly displaying the POPEYE character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(5).

31. At no time have Defendants been authorized by Plaintiffs to commit the acts complained of herein.

32. On information and belief, Defendants' infringement of the copyrighted POPEYE character has been and continues to be carried out with Defendants' full knowledge that such character is protected by copyright. In doing the acts complained of herein, Defendants have willfully and intentionally infringed Plaintiffs' copyright in the POPEYE character.

33. Plaintiffs have suffered and continue to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendants. Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, will be required to pursue a multiplicity of actions.

1304749v1

34.     Plaintiffs have sustained monetary damage as a result of Defendants' wrongful acts as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the money damages they have suffered by reason of said infringing acts.

35.     On information and belief, Defendants have obtained gains, profits and advantages as a result of their infringing acts as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the gains, profits and advantages that Defendants have obtained by reason of their infringing acts.  In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable under 17 U.S.C. § 504, Plaintiffs will require an accounting from each Defendant of all monies generated from their infringing acts.  In the alternative, Plaintiffs may elect to recover for each of their copyrighted works infringed statutory damages pursuant to 17 U.S.C. § 504(c).

## SECOND CLAIM FOR RELIEF

(For Copyright Infringement of the FLASH GORDON Character)

36.     Plaintiffs hereby reallege and incorporate by reference as if fully set forth hereat the allegations of paragraphs 1 through 24 above.

37.     This claim arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

38.     The design, configuration and distinctive features of the FLASH GORDON character are wholly original and constitute copyrightable subject matter under the Copyright Act.

39.     At all times relevant to this complaint, the copyright in the FLASH GORDON character was owned by King Features and exclusively licensed to Hearst Holdings, both of which are, and at all relevant times have been, U.S. citizens.

40.     All formalities required to be observed in order to maintain the copyright in the FLASH GORDON character have been observed.

1304749v1

41.     Defendants have infringed and contributorily infringed the copyright in the FLASH GORDON character by the following acts, among others:

    a.    copying and inducing or facilitating the copying of the FLASH GORDON character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(1);

    b.    creating and inducing or facilitating the creation or derivative works based upon the FLASH GORDON character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(2);

    c.    distributing and inducing or facilitating the distribution of copies of Plaintiffs' copyrighted FLASH GORDON character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(3); and

    d.    publicly displaying the FLASH GORDON character in violation of Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 106(5).

42.     At no time have Defendants been authorized by Plaintiffs to commit the acts complained of herein.

43.     On information and belief, Defendants' infringement of the copyrighted FLASH GORDON character has been and continues to be carried out with Defendants' full knowledge that such character is protected by copyright.  In doing the acts complained of herein, Defendants have willfully and intentionally infringed Plaintiffs' copyright in the FLASH GORDON character.

44.     Plaintiffs have suffered and continue to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendants and Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

45.     Plaintiffs have sustained monetary damage as a result of Defendants' wrongful acts as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the money damages it has suffered by reason of said infringing acts.

46.    On information and belief, Defendants have obtained gains, profits and advantages as a result of their infringing acts as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the gains, profits and advantages said Defendants have obtained by reason of their infringing acts.  In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable under 17 U.S.C. § 504, Plaintiffs will require an accounting from each Defendant of all monies generated from their infringing acts.  In the alternative, Plaintiffs may elect to recover for each of their copyrighted works infringed statutory damages pursuant to 17 U.S.C. § 504(c).

### THIRD CLAIM FOR RELIEF

(By Plaintiff Hearst Holdings for Violation of the Lanham Act)

47.    Plaintiff Hearst Holdings hereby realleges and incorporates by reference as if fully set forth hereat the allegations of paragraphs 1 through 24 above.

48.    Hearst Holdings has long been a leader in the market for licensing cartoon characters for use in merchandise.  Today, Hearst Holdings owns or is exclusively authorized to offer merchandising rights in a variety of famous cartoon characters.  Among the most famous and profitable of these characters for licensing purposes has been POPEYE.  These properties have been licensed for use in accessories, domestics, food and beverages, gifts and novelties, housewares, publishing, stationery and paper goods, toys and games, and numerous other products.

49.    Hearst Holdings enjoys substantial goodwill as the sole source for merchandise licensing of POPEYE and a variety of famous cartoon characters and regularly uses the iconic images of those characters on its website and other promotional materials to promote that role.

12

50.     The images of POPEYE as used by Hearst Holdings have developed secondary meaning as signifying Hearst Holdings as the source of merchandising rights in a variety of the world's top cartoon characters (as in the case of POPEYE).

51.     Defendants are unfairly competing with Hearst Holdings by using images of cartoon characters to which Hearst Holdings has exclusive rights, particularly POPEYE, to promote Defendants' licensing business and attract clients who would otherwise do business with Hearst Holdings.  Defendants have, among other wrongful acts, used Hearst Holdings characters on wallboards at the recent Javits Center trade show in order to attract business; they have prominently displayed images of POPEYE on the AVELA "sell sheets" distributed at the Javits Center trade show not merely as images available for licensing but to promote and build credibility for the entire AVELA licensing business; and they have displayed numerous images of characters on the Art-Nostalgia website to which Hearst Holdings has exclusive rights.  Such usages by Defendants are likely to deceive their prospective clients and the public into thinking that their licensing activities are authorized, sponsored, or approved by Hearst Holdings, the true and only genuine source of licensing rights in these characters.

52.     Defendants have expressly and implicitly represented to the trade and the public in other ways that they are authorized to license merchandising rights in the characters that belong exclusively to Hearst Holdings.  For example, the AVELA website (www.avela.net) claims that AVELA "represent[s] the world's largest and rarest movie art collections of Hollywood," and bears the copyright of X one X Movie Archive.  Similarly, the licensing agreement that AVELA offers and has entered into with licensees includes a representation and warranty that AVELA has "the right to represent the artworks and has the power and authority to grant the licensee all rights and privileges granted to licensee under this agreement," which

13

1304749v1

include the purported right to manufacture and sell various articles of merchandise based on the licensed characters, and that "all [licensed] designs are property of X one X Movie Archive, Inc."

53.     By the foregoing wrongful acts, among others, Defendants have falsely designated the origin and falsely described the product, services and rights they offer for sale or license in such a way as to be likely to cause confusion or mistake or to deceive the trade and public into believing that such products, services and rights are affiliated, connected or associated or sponsored or approved by Hearst Holdings in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

54.     By the foregoing wrongful acts, among others, Defendants have misrepresented and falsely advertised in commercial advertising and promotion the nature, characteristics and qualities of their own goods, services and commercial activities, in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

55.     Hearst Holdings has been injured and is likely to continue to be injured by Defendants' wrongful acts, in that Hearst Holdings' exclusive position as licensor of merchandising rights of world famous cartoon characters is being tarnished and business likely has been and will continue to be diverted from the lawful trade of Hearst Holdings to the unlawful and infringing trade of Defendants. Hearst Holdings will also lose its hard-earned good will in its licensing business and exclusively licensed characters, which it has built up through decades of hard work, effort, financial investment and quality control.

## FOURTH CLAIM FOR RELIEF

(By Plaintiff Hearst Holdings for Unfair Competition under State Law)

56.     Plaintiff Hearst Holdings hereby realleges and incorporates by reference as if fully set forth hereat the allegations of paragraphs 1 through 24 and 48 through 55 above.

1304749v1

57.     By reason of the foregoing, Defendants have committed unfair competition under the statutory and common law of New York and other jurisdictions, including without limitation sections 349 and 350-a of the New York General Business Law, prohibiting deceptive trade practices.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, as follows:

A.      Preliminarily and permanently enjoining and restraining Defendants, their respective officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

(1)     Further violating, inducing, facilitating or otherwise contributing to the violation of any of the exclusive rights of Plaintiffs in Plaintiffs' copyrights in POPEYE and FLASH GORDON (hereinafter "Plaintiffs' Copyrights"), including their artwork, characters and/or other distinctive elements, including, without limitation,

(a)     Offering to license, and licensing, merchandise based on or that includes copies or derivative works of the characters protected by Plaintiffs' Copyrights;

(b)     Receiving royalties or other fees or profits from licenses they have purported to grant for merchandise based on or that includes copies or derivative works of the characters protected by Plaintiffs' Copyrights;

(c)     Claiming to the public, the trade, or the United States Copyright Office to own copyright in any images or works that infringe Plaintiffs' Copyrights;

(d)     Claiming to have the right to license merchandise based on or including copies or derivative works of the characters protected by Plaintiffs' Copyrights;

(e)     Manufacturing, publicly displaying, and distributing merchandise based on or including copies or derivative works of the characters protected by Plaintiffs' Copyrights.

15

(2)      Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, licensed, distributed or sold by Defendants are in any manner associated or connected with Plaintiffs or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

(3)      Engaging in any other activity constituting unfair competition with Plaintiffs or its licensees, or constituting an infringement of any of Plaintiffs' Copyrights or of Plaintiffs' rights in, or rights to exploit, those copyrights;

(4)      Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) – (3) hereinabove; and

(5)      Secreting, destroying, altering, removing or otherwise dealing with merchandise that infringes Plaintiffs' Copyrights or any books or records which contain any information relating to the importation, licensing, manufacture, production, distribution, circulation, sale, marketing, offering for sale, advertising, promoting or displaying of by Defendants any infringing merchandise.

B.      Declaring that:

(1)      Plaintiffs' Copyrights are valid and infringed by the acts and works of Defendants complained of herein;

(2)      Defendant X one X's purported copyrights in and to any work that consists of or includes copies or derivative works of the characters POPEYE and FLASH GORDON, including without limitation copyright registration certificates VA 1-309-404 and VA 1-309-413, are invalid;

16

1304749v1

(3)     Defendants have no right or authority to exercise any of the exclusive rights of copyright in and to Plaintiffs' Copyrights, or to license others to do so.

C.     Directing that Defendants deliver for impoundment:

(1)     All advertising, promotional and other material that includes copies or derivative works of characters protected by Plaintiffs' Copyrights, or which induce infringement of Plaintiffs' Copyrights; and

(2)     All digital files, plates, molds, matrices, heat transfers, printing, silk-screening or other apparatus or equipment utilized in making said infringing materials and all other means of making, copying or inducing or facilitating the making or copying of any work that infringes Plaintiffs' Copyrights.

D.     Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, licensed, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products, including without limitation the sending of corrective notices in a form approved by the Court to all identifiable persons to whom Defendants have promoted themselves as having the right to license POPEYE or FLASH GORDON.

E.     Ordering an accounting of and entering judgment against each Defendant for:

(1)     All profits received by any of the Defendants from the sale of infringing merchandise, as provided by 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b);

(2)     All damages suffered by Plaintiffs or their licensees as a result of any of Defendants' copyright infringements, as provided by 17 U.S.C. § 504(b);

(3)     In the alternative, at the election of Plaintiffs, statutory damages separately

1304749v1

against each Defendant, in an amount up to $150,000 per copyright, as a result of copyright infringement for each copyrighted work infringed by such Defendant, as provided for in 17 U.S.C. § 504(c)(1-2).

F.      Awarding Plaintiffs Defendants' profits, Plaintiffs' other damages sustained as a result of Defendants' illegal conduct, and the costs of the action, as permitted under Section 35 of the Lanham Act, 15 U.S.C. § 1117, including a multiplier of damages and attorney fees because of Defendants' willful misconduct.

G.      Awarding Plaintiffs punitive damages of not less than $500,000 for unfair competition under state law.

H.      Awarding Plaintiffs their costs in this action, including reasonable attorneys' and investigative fees, in an amount not less than $100,000, as provided in 17 U.S.C. § 505.

I.      Directing that the Court retains jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

J.      Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: August 25, 2006.

1304749v1

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____

    Robert P. LoBue (RL 2284)
    Gloria C. Phares (GP 7611)
    Ravi V. Sitwala (RS 2140)
    Attorneys for Plaintiffs

Of Counsel to Plaintiffs:

SIDLEY AUSTIN LLP
Stephen G. Contopulos, Esq.
555 W. Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6625
(213) 896-6600

1304749v1

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: _25 August 2006_.

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____

Robert P. LoBue (RL 2284)
Gloria C. Phares (GP 7611)
Ravi V. Sitwala (RS 2140)
Attorneys for Plaintiffs

20

1304749v1

Exhibit A



Exhibit B





Exhibit C



# A. V. E. L. A. LICENSING POLICIES

### 15 Poster Artworks per Agreement
## LICENSE IS BROKEN UP BY PROPERTIES/GENRE

i.e.
Animation
Western
Classic
Sci-Fi Horror
Comedy
Pulp Classics
Artist

For example LICENSING PRODUCT CATEGORY

Apparel

| Men Adults | | Ladies Adults | |
|---|---|---|---|
| JR Boys | 13-23 | JR Girls | 12-25 |
| Son | 7-12 | Girls | 7-11 |
| Children Boy | 4-7 | Children Girls | 4-7 |
| Infant | 0-3 | Infant | 0-3 |

Accessories
Domestics
Food & Beverages
Gift & Novelties
House wares
Publishing
Stationery & Paper Goods
Toys & Games

A. New agreement after the 1st 15 artworks (or)
B. An Artwork fees to Amendment the current Licensing Agreement
   for additional Artwork.
C. License is broken up by:  Distribution, Territory, Product Categories

Royalty Rates: 10 %Mass Merchants      (Wal-Mart, Kmart, Target)
12% Mid-Tier/Department   (Kohl's, J.C. Penney, Sears,
                          Burlington, Coat Factory, Macy's,
                          Federated Group,Marshalls,
                          TJ Maxx and Ross)
14%Specialty             (Nordstroms, Virgin Entertainment
                          Group, Boutiques)
16%High End              (Nieman, Fred Segal)

A.V.E. L.A., Inc.  1135 TERMINAL WAY #209 RENO, NV 89502
Tel:  877-99-AVE-LA   Outside U.S.A. and at the show:  702-349-4850
     (877-992-8352)
Fax: 888-800-4855   E-Mail:  Licensing@avela.net   Website:  www.avela.net



<u>Exhibit D</u>



